Richard Lehv (rlehv@fzlz.com)
Leo Kittay (lkittay@fzlz.com)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
4 Times Square, 17th Floor
New York, NY  10036
Phone:  (212) 813-5900
*Attorneys for Plaintiff, JRSK, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JRSK, Inc.,<br><br>                              Plaintiff,<br><br>     v.<br><br>Prized Ventures Ltd. and Monos Travel Ltd.,<br><br>                              Defendants. | Civil Action No. _____<br><br>**COMPLAINT** |

Plaintiff, JRSK, Inc., by its attorneys, Fross Zelnick Lehrman & Zissu, P.C., for its

Complaint against Prized Ventures Ltd. and Monos Travel Ltd., collectively doing business as

Monos (hereinafter together and individually "Defendant") alleges the following:

**NATURE OF THE ACTION**

1.      Plaintiff, JRSK, Inc., doing business as AWAY, is a well-known and highly

successful designer, manufacturer, and retailer of luggage for the modern traveler.  Defendant,

Prized Ventures Ltd., doing business as MONOS, is a new company threatening to launch a line

of luggage that copies the distinctive design (or "trade dress") of Plaintiff's famous AWAY®

luggage, and is copying the look and feel of Plaintiff's AWAY website.

2.      Not only is Defendant's conduct threatening to damage Plaintiff, and to cause

immediate and irreparable harm to Plaintiff, but it also threatens to deceive the public.

3.      Accordingly, Plaintiff asserts claims for unfair competition under Section 43(a) of

the Trademark Act, 15 U.S.C. § 1125(a); and substantial and related claims under New York

{F2579298.6 }

unfair competition law.  Plaintiff seeks injunctive relief to prevent further injury, as well as monetary relief in the form of Plaintiff's damages, punitive damages, any profits of Defendant, attorneys' fees, interest, and such other relief as the Court deems just and proper.

## PARTIES

4.      Plaintiff, JRSK, Inc., is a corporation organized and existing under the laws of Delaware, with a principal place of business at 419 Lafayette Street, New York, NY 10003.

5.      On information and belief, each defendant is a corporation organized and existing under the laws of Canada, with its principal place of business at 1383 West 8th Avenue, Vancouver, BC V6H3V9, Canada.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 in that the amount in controversy exceeds the sum or value of $75,000 and is between citizens of New York and of Canada, and under Section 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121, and under Sections 1331, 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

7.      This Court has personal jurisdiction over Defendant because Defendant is selling or offering its infringing products for sale in this district and actively seeking capital to finance those products through Kickstarter, which is based in New York.

8.      Venue is proper in this district under Section 1391(b) of the Judicial Code, 28 U.S.C. § 1391(b) and (c)(3).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### A.     Plaintiff's Business and Trade Dress

9.      Plaintiff, JRSK, Inc., based in New York City, sells highly successful lines of luggage under the AWAY brand.  Plaintiff's products are available through its online store at www.awaytravel.com and at its own stores in New York City, Los Angeles, San Francisco, London, Austin, TX, Chicago O'Hare International Airport, and additional stores opening before the end of 2018 in Chicago and Boston.

10.     Plaintiff is best known for a line of hard-sided suitcases that share the same design (the "polycarbonate collection").  The suitcases in this line are available in five sizes ("The Carry-On," "The Bigger Carry-On," "The Medium," "The Large," and the "Kids Carry-On"). As a result of the talent of its designers, hard work and significant financial investment, Plaintiff developed a distinctive, sophisticated design (or trade dress) for the polycarbonate collection having the following unique and distinctive combination of elements:

      a.      The overall shape of the suitcase is a rounded rectangle, whether viewed from the front, the side, or the top;

      b.      The surface of the suitcase has horizontal, indented ridges, which extend around the sides of the suitcase;

      c.      The AWAY trademark is shown on a name plate in a small, rounded rectangular indentation on the front of the suitcase;

      d.      Apart from the horizontal ridges and name plate, there are no lines, borders, metal plates, or other embellishments on the surface of the suitcase, giving the suitcase its clean, minimalist look;

      e.      The polycarbonate material has a matte finish in muted colors;

f.      There are two black handles on the top: one is fixed and the other telescopes, allowing the suitcase to be pulled;

g.      The fixed handle is a wide, flat ribbon shape with rounded ends. The user can lift it slightly, and, when lifted, it has the shape of a low, wide bell curve. The same handle design is used on the side of the suitcase;

h.      The top of the telescoping handle has an elongated shape, with the ends of the handle extending somewhat beyond the width of the two telescoping struts; the telescoping handle extends from a black framed housing;

i.      The suitcase is held closed by a recessed zipper, which extends around the suitcase;

j.      The zipper is held in place and framed by a black welt, which provides a contrasting color on light-colored suitcases;

k.      There is a combination lock at the top of the suitcase; the lock is flush with the surface of the suitcase, in keeping with the minimalist design; the suitcase can be locked by inserting the ends of the zipper into the combination lock;

l.      The suitcase rolls on four wheels, which are attached to the suitcase by indented housings, which allows the shape of the bottom of the suitcase to mirror the rounded top of the suitcase; the wheels and wheel housings are black, which is another contrasting detail on light-colored suitcases.

11.    The following photographs show the trade dress:



12.     The foregoing combination of design elements is non-functional.

13.     Plaintiff's luggage has been enormously successful.  In the past 12 months alone,

the luggage has been featured in approximately 2000 stories in the press, many of which

illustrate the trade dress, and many feature well-known celebrities along with the trade dress. The

luggage has been shown in a number of successful television shows, including *Homeland* and

*Blackish*.  Plaintiff has endorsement arrangements with a number of celebrities, including NBA

star Dwyane Wade.  Plaintiff's Facebook page has garnered over 84,000 "likes."  Plaintiff's

Instagram account has 305,000 followers.  Plaintiff was recently listed in *Forbes* magazine's list

of "The Next Billion-Dollar Startups 2018."

14.     As a result of Plaintiff's efforts and the tremendous success of Plaintiff's

products, Plaintiff's trade dress has acquired secondary meaning, in that it has come to identify

Plaintiff exclusively and uniquely in its field.

15.     The trade dress represents enormous goodwill of Plaintiff, signifying products

that are of the highest quality and that derive exclusively from Plaintiff.

16.     Plaintiff will suffer irreparable harm if Defendant is allowed to trade on Plaintiff's

reputation and goodwill by offering goods that copy Plaintiff's trade dress.

**B.      Defendant's Unlawful Conduct**

17.     Defendant is currently advertising a line of luggage under the MONOS mark that

is virtually identical to Plaintiff's AWAY polycarbonate line.

18.     Defendant's luggage is shown below:



19.     Defendant has made minimal changes to Plaintiff's design, to avoid being accused of selling out-and-out counterfeits.  These changes, such as varying the spacing of the indented ridges, and moving the placement of the logo from the upper right to the upper center of the suitcase, would not be noticeable to a consumer unless the consumer places the two suitcases side by side.

20.     Defendant's website copies the overall look and feel of the AWAY website and uses product photographs that mimic those on Plaintiff's website.

21.     In addition, Defendant has copied a graphic representation from Plaintiff's website that explains how it allows consumers to save money.



22.     Defendant claims that it intends to launch imminently an initial round of funding on the crowdfunding website Kickstarter, in which consumers will be able to invest in Defendant and purchase Defendant's products at a discount.

23. Defendant's line of luggage is directed to the exact same customers and potential customers as those for Plaintiff's products.

24. Customers and potential customers could easily believe, mistakenly, that Plaintiff's business and Defendant's business are one and the same, that Defendant's products are a line extension of Plaintiff, or that Defendant is an affiliate of Plaintiff, or that Plaintiff licenses, endorses or approves of Defendant's business or products, or that Plaintiff and Defendant are otherwise connected or associated.

25. Even the most careful consumer is likely to be confused by Defendant's use of Plaintiff's trade dress.

## C.   Harm Caused by Defendant's Infringing Conduct

26. On information and belief, Defendant's conduct is intended to cause confusion and is intentionally fraudulent, malicious, willful, and wanton.

27. Defendant's conduct appears to be calculated to confuse and mislead consumers, to divert business from Plaintiff and otherwise to misappropriate the goodwill of Plaintiff.

**FIRST CLAIM FOR RELIEF:**
**UNFAIR COMPETITION (15 U.S.C. § 1125(a))**

28. Plaintiff owns a valid and protectable trade dress, consisting of a number of non-functional elements, as more fully described above.

29. By virtue of extensive sales, advertising and promotion, as well as editorial references and other marketing, the foregoing trade dress has acquired secondary meaning, and thus identifies Plaintiff as the source of the goods.

30. Defendant has copied Plaintiff's trade dress.

31. Defendant's copying of Plaintiff's trade dress is likely to cause confusion or to cause mistake or to deceive customers, potential customers, the public, and the media as to the

affiliation, connection or association between Defendant and Plaintiff, or as to the origin, sponsorship or approval of Defendant's products.

32.     This conduct is in effect a representation that Defendant is connected with or authorized by Plaintiff, and places Plaintiff's own reputation and goodwill beyond Plaintiff's control.

33.     On information and belief, Defendant's conduct is willful, deliberate and in bad faith, and undertaken with full knowledge of Plaintiff's rights and for the deliberate purpose of harming Plaintiff and its goodwill.

34.     As a result of the foregoing, Defendant has falsely designated the origin of its products and has engaged in unfair competition, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

35.     Defendant's conduct has caused and is causing irreparable injury to Plaintiff, and, unless enjoined by this Court, will continue both to damage Plaintiff and to deceive the public. Plaintiff has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF:
## COMMON LAW UNFAIR COMPETITION

36.     Defendant's conduct constitutes unfair competition under the common law of the State of New York.

37.     On information and belief, Defendant's conduct is willful, deliberate and in bad faith.

38.     Defendant's conduct has caused and is causing irreparable injury to Plaintiff, and, unless enjoined by this Court, will continue both to damage Plaintiff and to deceive the public. Plaintiff has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF:
### DECEPTIVE TRADE PRACTICES IN VIOLATION OF N.Y.
### GEN. BUS. LAW § 349

39.     By copying Plaintiff's trade dress, Defendant has engaged in activities that deceive or have a tendency to deceive a material segment of the public to which Defendant has directed its marketing activities.

40.     On information and belief, through such deceptive acts, Defendant has engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers and harm to the public in the State of New York.

41.     On information and belief, Defendant's conduct is willful and in knowing disregard of Plaintiff's rights.

42.     By virtue of the foregoing, Defendant has engaged in deceptive acts or practices in the conduct of its business, in violation of Section 349 of the General Business Law of the State of New York.

43.     Defendant's conduct has caused and is causing irreparable injury to Plaintiff, and, unless enjoined by this Court, will continue both to damage Plaintiff and to deceive the public. Plaintiff has no adequate remedy at law.

**WHEREFORE**, Plaintiff respectfully demands judgment as follows:

1) Entering judgment for Plaintiff on each of its claims.

2) Directing that Defendant, and its partners, officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors and assigns, and all persons acting in concert or in participation with any of them, be preliminarily and permanently enjoined from:

a. Using or copying Plaintiff's trade dress, including without limitation from manufacturing, importing, selling, offering for sale, advertising, or promoting Defendant's MONOS luggage; as well as copying the look and feel of Away website;

b. Using any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the public or the media or to deceive the public or the media into believing that Defendant's products, services or activities are in any way sponsored, licensed, endorsed, or authorized by, or affiliated, associated or connected with, Plaintiff, or originate from Plaintiff;

c. Doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead the public into the belief that the goods or services promoted, offered, or rendered by Defendant emanate from or originate with Plaintiff, or are somehow sponsored, licensed, endorsed, or authorized by, or affiliated, associated or connected with, Plaintiff, or originate from Plaintiff;

d. Engaging in any other activity constituting unfair competition with Plaintiff or constituting an infringement of Plaintiff's trade dress;

e. Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (d), or effecting any assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (d).

3) Directing that Defendant deliver up to Plaintiff for destruction or other disposition, without any compensation to Defendant, all products, labels, tags, signs, stationery,

prints, packages, molds or the like, parts or partially completed products, promotional and marketing materials, advertisements and other materials currently in their possession or under its control incorporating, featuring or bearing Plaintiff's trade dress.

4)      Directing such other relief as the Court may deem appropriate to prevent the public from deriving the erroneous impression that any goods or services sold or rendered or promoted by Defendant are authorized by Plaintiff or related in any way to Plaintiff or Plaintiff's business, or that Defendant is otherwise affiliated with Plaintiff.

5)      Directing Defendant to file with the Court and serve on counsel for Plaintiff within thirty (30) days after entry of judgment, a sworn written statement setting forth in detail the manner and form in which Defendant has complied with paragraphs 2 through 4 above.

6)      Directing Defendant to account for and pay to Plaintiff its profits, gains, property and advantages attributable to the unlawful conduct.

7)      Awarding Plaintiff such damages that it has sustained or will sustain by reason of Defendant's unlawful conduct, as well as punitive damages.

8)      Pursuant to 15 U.S.C. § 1117(a), awarding Plaintiff an amount up to three times the amount of actual damages sustained as a result of Defendant's violations of the Lanham Act.

9)      Awarding Plaintiff the costs of this action including reasonable attorneys' fees pursuant 15 U.S.C. § 1117 and applicable state law.

10)      Awarding Plaintiff interest, including pre-judgment interest, on the foregoing sums.

11)      Awarding Plaintiff such other and further relief as the Court deems just and proper.

{F2579298.6 }

12

Dated:   New York, New York
        November 16, 2018

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By:_____

    Richard Lehv (rlehv@fzlz.com)
    Leo Kittay (lkittay@fzlz.com)
4 Times Square, 17th Floor
New York, New York 10036
Tel:  (212) 813-5900

*Attorneys for Plaintiff, JRSK, Inc.*

{F2579298.6 }

13